IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.          )<br>)<br>BRIAN DAVID HILL,              )<br>)<br>Defendant.      ) | The Honorable Thomas T. Cullen<br>Case No. 4:20-cr-00027 |

**POSITION OF THE UNITED STATES ON
MODIFICATION OF SUPERVISED RELEASE CONDITIONS**

The United States Probation Office ("USPO") seeks to modify defendant Brian David Hill's conditions of supervision. Broadly speaking, the modifications clarify and mirror previous conditions that required Mr. Hill to obtain USPO and court approval before using or possessing electronic devices, conditioned on device-monitoring, and required Mr. Hill to submit to warrantless searches of his electronic devices. The revisions to these conditions, like the pre-existing conditions, are eminently justified by Mr. Hill's underlying possession of child pornography conviction, noncompliance while under supervision, and failure to take accountability for his offense. Accordingly, the United States concurs with the modified conditions and respectfully requests that the Court impose them.

**I.      LEGAL STANDARD**

    **A.      General standard for modifying supervisory conditions**

The Court "may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release,

pursuant to [Federal Rule of Criminal Procedure 32.1(c)] . . . and the provisions applicable to the initial setting of the terms and conditions of post-release supervision." 18 U.S.C. § 3583(e)(2). In turn, Rule 32.1(c)(1) entitles a defendant to a hearing, "at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation," before the Court may modify supervisory conditions. "A district court may modify the conditions . . . even when the modification is based only on evidence that was available at the original sentencing and not on changed circumstances." *United States v. Kelly*, 449 F. App'x 293, 295 (4th Cir. 2011).

As to the standard governing the conditions:

> [C]ourt[s] may only impose conditions that (1) are "reasonably related" to [a defendant's underlying offenses and history and characteristics,] the goals of deterrence, public protection, and rehabilitation; (2) affect "no greater deprivation of liberty than is reasonably necessary" to achieve those goals; and (3) are "consistent with any pertinent policy statements issued by the Sentencing Commission."

*United States v. Boyd*, 5 F.4th 550, 557 (4th Cir. 2021) (quoting 18 U.S.C. § 3583(d)). The standard gives "courts broad latitude to impose conditions on supervised release." *United States v. Dotson*, 324 F.3d 256, 260 (4th Cir. 2003). Accordingly, "§ 3583(d) does not require conditions of supervised release that fit the defendant's circumstances perfectly." *United States v. Fall*, No. 2:17-CR-12, 2024 WL 4850502, at *7 (E.D. Va. Nov. 21, 2024). Still, "[t]he reasonably necessary prong requires the court to select 'the least restrictive alternative' to achieve the statutory purposes." *United States v. Sueiro*, 59 F.4th 132, 144 (4th Cir. 2023) (quoting *United States v. Ellis*, 984 F.3d 1092, 1104 (4th Cir. 2021)).

### B. Standards for conditions restricting and monitoring electronic devices and internet access

"Special conditions involving limitations on computer use or required computer monitoring have been upheld when the defendant has a history of using a computer or the Internet to commit present or prior crimes." *United States v. Mixell*, 806 F. App'x 180, 185 (4th Cir. 2020). Of course, these conditions fall on a sliding scale. On the stringent end, courts can impose an outright ban on internet use, *see Ellis*, 984 F.3d at 1102–03, but "a complete internet ban is almost always excessive for 'non-contact child pornography activity, or similar conduct' where there was no actual contact with the victim," *United States v. Arce*, 49 F.4th 382, 396 (4th Cir. 2022). "[U]sing the internet to locate victims, coupled with evidence of a contact offense (even without a conviction) may support an internet ban." *United States v. Morris*, 37 F.4th 971, 977 (4th Cir. 2022).

Below a ban, courts can impose partial internet restrictions, with lesser justifications. For instance, they can "restrict a defendant from using the internet to access 'chat rooms, peer-to-peer file-sharing services, and any site where [they] could interact with a child.'" *Ellis*, 984 F.3d at 1104 (quoting *United States v. Holena*, 906 F.3d 288, 293 (3d Cir. 2018)). Or "bar a defendant from accessing websites with pornographic content, enforcing the rule with monitoring software and computer inspections." *Id.* at 1104. "A ban on access to pornography is acceptable where 'restriction on sexually stimulating material [is] necessary to treat [the defendant]'s addiction and to deter him from future crimes.'" *Arce*, 49 F.4th at 397 (alterations in original) (quoting *United States v. Van Donk*, 961 F.3d 314, 323 (4th Cir. 2020)).

Even less restrictive than a partial internet prohibition, courts can monitor a defendant's use of electronic devices by installing software on those devices and conducting warrantless searches. This restriction is appropriate for defendants with a history of using child pornography. *See, e.g.*, *United States v. Kunz*, 68 F.4th 748, 760 (2d Cir. 2023) ("[T]he rationale for monitoring Kunz's computer access was 'self-evident,' . . . not just from the details of his original child pornography conviction, but also from his prolific record of supervised release violations since then."); *United States v. Browder*, 866 F.3d 504, 512 (2d Cir. 2017) ("Browder was convicted of possessing over 462 digital images of child pornography that he received (and shared) on internet exchanges, so computer monitoring is 'reasonably related' to the nature and circumstances of the offense and Browder's history and characteristics."); *United States v. Goddard*, 537 F.3d 1087, 1090 (9th Cir. 2008) ("Subjecting computers and other devices able to access the Internet to monitoring, search and seizure is critical to preventing Goddard from viewing or obtaining child pornography . . . ."). Further, "[i]f a child pornography defendant can be *required* to participate in a computer monitoring program, it follows *a fortiori* that his Internet access can be conditioned on such participation." *United States v. Savastio*, 777 F. App'x 4, 7 (2d Cir. 2019).

When assessing this spectrum of restrictions, there are three particularly salient factors: "(1) the defendant used the internet in the underlying offense; (2) the defendant had a history of improperly using the internet to engage in illegal conduct; or (3) particular and identifiable characteristics of the defendant suggested that such

4

a restriction was warranted." *United States v. Hamilton*, 986 F.3d 413, 422 (4th Cir. 2021) (quoting *United States v. Perazza-Mercado*, 553 F.3d 65, 70 (1st Cir. 2009)).

## II.   MODIFICATIONS TO MR. HILL'S CONDITIONS

In a nutshell, the USPO proposed adding the following supervisory conditions: (1) Mr. Hill must inform the USPO of all digital devices possessed or accessible to him and inform the USPO of all of his social media accounts. (2) He is permitted standard digital devices but must permit the USPO to install monitoring software on them, configured as needed. (3) The USPO will assess whether Mr. Hill should have non-standard devices. (4) Mr. Hill must allow periodic searches of his digital devices to ensure, *inter alia*, monitoring software is functional and untampered. (5) Mr. Hill must submit to searches of his person, property, residence, digital devices, etc. when there is reasonable suspicion that he violated his supervisory conditions. (6) Mr. Hill is allowed to have smartphones if they do not have a mobile hotspot feature or the feature is disabled, and monitoring software is installed on the phone. (7) Mr. Hill can keep his PlayStation 2, PlayStation 4, Xbox 360, and desktop computer at his residence only, so long as he does not obtain residential internet access. Finally, (8) Mr. Hill cannot keep his Nintendo Switch, because its internet access is unmonitorable.

Additionally, the USPO's proposed modifications remove current conditions that largely mirror the requirements that Mr. Hill only use and access approved digital devices, where approval is contingent on a monitoring program, and submit the devices to searches. In other words, the new conditions revamp the older

5

conditions by clarifying that the USPO will monitor approved devices with individually configured software; explicitly permitting certain devices Mr. Hill already has; and prohibiting a single device (the Nintendo Switch) because it cannot be monitored. Thus, Mr. Hill's proposed conditions are—on the whole—arguably less onerous than his current conditions.

## III. THE MODIFICATIONS ARE JUSTIFIED

On the spectrum of the digital device and internet-related restrictions discussed above, Mr. Hill's proposed conditions are minimally restrictive. The USPO does not seek to fully or even partially restrict Mr. Hill's access to lawful online content. It merely proposes that he get authorization for new devices and allow installation of monitoring software. Such conditions are reasonably related to Mr. Hill's offense, his personal history and characteristics, and federal sentencing goals, and they affect no greater deprivation than reasonably necessary. *See* § 3583(d).

### A. Mr. Hill's offense and history and characteristics

On June 10, 2014, Mr. Hill pled guilty to possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). Presentence Investigation Report ("PSR") ¶¶ 1–2, ECF No. 22. Mr. Hill downloaded child pornography that included unconscionable images and video of elementary aged girls enduring sexual torture. *Id.* ¶ 4. Investigators found that Mr. Hill had 5,276 images and 93 videos of child pornography. *Id.* ¶ 4. Some materials depicted infants. *Id.*

Despite this, during Mr. Hill's psychological evaluations for his PSR, he denied viewing child pornography or having any deviant sexual inclinations. *See id.* ¶ 45.

6

These tests showed Mr. Hill had "little if any interest in treatment for his sexual behavior." *Id.* Although he acknowledged child pornography was on his computer, he claimed it came unwittingly through a police-instigated virus. *Id.* He further claimed he confessed to protect his mother and pled guilty because he could not suppress the allegedly coerced confession. *Id.* Somehow, Mr. Hill still received a reduction for acceptance of responsibility. *Id.* ¶¶ 28–29. Mr. Hill's psychological testing also showed indicators of grandiosity, paranoia, and narcissism. *See id.* ¶ 45.

Mr. Hill's first term of supervised release began November 13, 2014. Req. for Summons & Mod. of Superv. Conds. 4, ECF No. 11. On June 15, 2015, Mr. Hill was found to have violated his supervised release by verbally abusing a previous probation officer ("PO") and failing to follow her instructions. *See id.* The presiding court ordered Mr. Hill to remain on supervised release, participative in cognitive behavioral therapy, and serve six months on home detention. *Id.* On September 12, 2019, Mr. Hill was again found to have violated supervised release, this time for committing indecent exposure, in violation of Virginia Code § 18.2-387. *See id.*[1] The court revoked Mr. Hill's supervised release and sentenced him to nine months in jail, followed by a nine-year term of supervised release. *Id.*

---

[1] According to the Virginia Judiciary Online Case Information System 2.0 (accessible at https://eapps.courts.state.va.us/ocis/landing), Mr. Hill pled guilty to indecent exposure on November 15, 2019.

Per Virginia Code § 18.2-387: "Every person who intentionally makes an obscene display or exposure of his person, or the private parts thereof, in any public place, or in any place where others are present, or procures another to so expose himself, shall be guilty of a Class 1 misdemeanor."

7

Long after Mr. Hill's supervision was transferred to the Western District of Virginia, his PO and her supervisor visited Mr. Hill's apartment on April 25, 2024. *See id.* at 5. There, Mr. Hill had internet-capable devices: two smartphones, a desktop computer, smart TV, Roku streaming player, PlayStation 2, PlayStation 4, Xbox 360, and Nintendo Switch. *See id.* None of these devices had monitoring software, in contravention of Mr. Hill's conditions. *Id.*

Unbeknownst to the POs, Mr. Hill activated a recorder on one of his phones when they arrived for the home visit. *See id.* at 6. At some point during the visit, Mr. Hill left his apartment, leaving the active recorder with the POs, which continued to capture their conversation. *See id.* This violated Virginia's criminal wire intercept statute, a felony. *See* Va. Code § 19.2-62.

Following the visit, Mr. Hill posted several articles on his personal website using an alias. *See id.* One article "alleged that the [POs] conspired to charge [Mr. Hill] with fabricated violations of his supervised release." *Id.* Mr. Hill also posted a video where he described the visit, alleging that the POs were corrupt and trying to blackmail him and fabricate violations. *See id.*

**B.     The modifications meet the standard of § 3583(d)**

Thus, the modifications—essentially, requiring Mr. Hill to have monitoring software on his internet-ready devices, not use devices that cannot receive the software, and submit to warrantless searches of his property and the devices—are reasonably related to his circumstances and the goals of federal sentencing. Given the volume and reprehensible nature of child pornography that Mr. Hill collected,

8

device monitoring is reasonably related to his offense, and not unnecessarily burdensome. *Cf. Browder*, 866 F.3d at 512 (finding a device-monitoring condition justified even though the defendant possessed less than a tenth of the number of images possessed by Mr. Hill). Monitoring software will deter Mr. Hill from committing another crime and foster his rehabilitation. *See United States v. Fall*, No. 2:17-CR-12, 2024 WL 4850502, at *8 (E.D. Va. Nov. 21, 2024) (finding "constant monitoring [was] the only viable means to achieve deterrence, protection of the public, and rehabilitation if the defendant ha[d] access to a computer," where the defendant was a chronic collector of digital pornography).

Although it has been ten years since Mr. Hill's conviction, his risk of recidivism remains clear. To begin with, he has already violated his supervisory conditions by, *inter alia*, verbally abusing and failing to comply with a former PO; exposing himself publicly in 2018, a sexual offense; and, just this year, possessing devices with no monitoring software. On top of this, he denies responsibility for his offense and any need for treatment. These denials apparently stem from delusions of grandeur and an entrenched martyr complex. Mr. Hill's delusional thinking also appears to have motivated his public accusations that his PO fabricated violations against him and his decision to covertly record her. Mr. Hill's denial of responsibility and obdurate opposition to supervision underscore his danger of recidivism. Accordingly, it is critical that the USPO effectively monitor Mr. Hill's digital devices, despite the passage of time.

9

The USPO is also justified in requiring warrantless searches of Mr. Hill's devices to ensure the monitoring software is functional, properly calibrated, and not being subverted. This search requirement is especially crucial for Mr. Hill, who appears to be tech savvy, and thus potentially more knowledgeable in how to evade monitoring software. *See* PSR ¶¶ 7, 40. Finally, given the continuing need for monitoring, the USPO should also be empowered to forbid devices that cannot be monitored. *Cf. Savastio*, 777 F. App'x at 7 ("If a child pornography defendant can be *required* to participate in a computer monitoring program, it follows *a fortiori* that his Internet access can be conditioned on such participation.").

## IV.   CONCLUSION

Mr. Hill's modifications largely track the conditions already in place, requiring pre-approval and monitoring for his digital devices and warrantless searches of those devices. The revised conditions specify that the monitoring will occur through individually calibrated software, and they delineate which current devices Mr. Hill can and cannot possess. Because Mr. Hill possessed voluminous and violent child pornography, violated supervision on at least three separate occasions, and denies any responsibility for his conviction, the modifications are amply justified. The United States respectfully requests that the Court impose the modifications.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

 /s/ *Drew O. Inman*

DREW O. INMAN
PA Bar No. 328494
Assistant United States Attorney
P.O. Box 1709
Roanoke, VA 24008-1709
540-857-2250 (Office)
540-857-2614 (Fax)
drew.inman@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2024, I electronically filed this document with the Clerk of the Court using CM/ECF, which notifies all counsel of record.

 /s/ *Drew O. Inman*
Assistant United States Attorney

11