

In the United States District Court
For the Western District of Virginia

Brian David Hill,
Defendant

   v.

United States of America,
Plaintiff

)
)
)
)
)
)
)
)
)
)
)

**Criminal Action no. 4:20-cr-00027**

**Other case no. 1:13-cr-435-1, M.D.N.C.**

<u>CRIMINAL DEFENDANT BRIAN DAVID HILL'S NOTICE OF FILING
EVIDENCE NECESSARY BEFORE THE HEARING, AND REQUEST TO
TAKE IT INTO CONSIDERATION AT THE HEARING</u>





**Brian David Hill – Ally of Qanon**
**Founder of USWGO Alternative News**
**310 Forest Street,**
**Apt. 2 Martinsville,**
**Virginia 24112**
**(276) 790-3505**
**c/o: Rbhill67@comcast.net; Roberta Hill**

*Pro Se Appellant*       – JusticeForUSWGO.wordpress.com

COVER PAGE

1

"Criminal defendant Brian David Hill's notice of filing evidence necessary before the hearing, and request to take it into consideration at the hearing" also called the Notice of filing evidence with the U.S. District Court is hereby being filed by Criminal Defendant and supervised release Probationer Brian David Hill ("Brian D. Hill", "Hill", "Brian", "Defendant", "Probationer") in the above-named case.

I, Brian David Hill, declare pursuant to Title 28 U.S.C. § 1746 and subject to the penalties of perjury, that the following is true and correct:

For the reasons under penalty of perjury as the Probationer will state herein, Petitioner does not believe he will receive a fair hearing and impartial hearing regarding the Petition for modification of the conditions of his supervision under Document #11 by the United States Probation Office for the Western District of Virginia under Haylea N. Workman.

Since the Defendant is filing these pro se, the Defendant respects giving the Government an opportunity to respond to this filing of evidence. The Defendant feels he will not have a fair hearing, so he is submitting this evidence ahead of time before the hearing since he is not very good at verbal things like testifying verbally at hearings compared to typing and writing. The Defendant wants this important evidence submitted so the Judge, the prosecutor, and the defense attorney can read what needs to be said in court, what needs to be on court record, and what should

2

later be used to take into consideration before the hearing, and during the hearing, and before a final decision is made regarding modification of Defendant's supervised release. The Defendant doesn't want anyone to be deprived of due process of law, so the Defendant is okay with the Government responding to this filing and the exhibits.

This does not include every conversation recordings between Brian Hill and Haylea Workman except only one conversation which is dated on February 28, 2024. Public Defender Asst. Nia who represents the Defendant has the other recordings which may be vital to showing that the Defendant may not need worse conditions than previously imposed.

Six important exhibits will be attached and filed with the Court as well as three attachment documents which are not marked as exhibits. Originally Probationer had planned to file ten exhibits, but a majority are not as critical and necessary as the six exhibits and attachment documents attached to this pleading.

Petitioner understands the Public Defender will not be happy with the Defendant making this filing pro se, but the Defendant feels IT IS NECESSARY to prevent an unfair ambush hearing (ambush trial or trial by ambush), further miscarriage of justice, and harm to the Defendant and his family members Roberta Hill, Kenneth Forinash, and Stella Forinash.

3

There is evidence which cannot be easily refuted, the Defendant shall submit this evidence to the U.S. District Court upon his own free will to prove he does not deserve any further restrictions on his conditional liberty. The U.S. Attorney Office omitted and overlooked many things which would be favorable to the Defendant in its position papers. The defendant fears he will be wrongfully railroaded into more restrictions to his conditional liberty under false pretenses and the Public Defender said repeatedly she is limited in what she can do for the Probationer, when hard evidence exists favorable to the Probationer in this case. Evidence the judge needs to look at and listen to before a hearing in the future regarding the petition to modify the conditions of the supervised release as to Brian D. Hill.

This is in support of "DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION TO MODIFY CONDITIONS OF SUPERVISED RELEASE" ECF No. 26 and in opposition to the claims made in Document #11 by the United States Probation Office for the Western District of Virginia under Haylea N. Workman. Brian will file this entire filing as an unsworn affidavit/Declaration under penalty of perjury and declare the attached Exhibits so that they are presumed to be admissible under the Federal Rules of Evidence when filed in this criminal case. Defendant hereby waives privacy protection as to his home address in the exhibits and home address in the affidavits since Brian is (wrongfully) on the Virginia offender registry, which is public, so Defendant does

4

not wish to have to redact the home address in every exhibit concerning his own filings and his own information of his home address. However, Defendant does wish for privacy protection of his social security number (social security number redacted or partially redacted in his filings). Defendant wishes to show the court as to what is really going on. This is pursuant to Rule 49.1(h) of the Federal Rules of Criminal Procedure. This filing should be on public record. Defendant will redact the home addresses, and any other information required of a redaction or partial redaction of anyone else in any exhibits in attachment to this filing.

**SPECIAL NOTE FOR THE JUDGE AND PROSECUTOR:** Defendant also plans on petitioning Virginia for removal from the Sex Offender Registry since ten years have already gone by as the U.S. Attorney had promised or given written word that Defendant can petition or apply to get off of the registry after ten years. See United States v. HILL, 1:13-cr-00435, (M.D.N.C. Nov 14, 2017) ECF No. 131, Pages 37 and 38 of 101: ("I believe that for this conviction, he could apply to come off the registry after 10 years").

Anyways, the Defendant shall now state under penalty of perjury in this entire pleading, the evidence Exhibits the Defendant wishes to file and submit to the Clerk of this Court and provide copies of certain Exhibits for the Clerk of this Court to serve with the U.S. Attorney who represents the United States Probation Office in this case, the judge, and as well as his own lawyer. Then Petitioner asks

5

that the presiding District Judge Thomas T. Cullen, to review over this pleading and all Exhibits in support of this pleading. The truth must come out in public record, Donald Trump and Tulsi Gabbard may be watching this case, and I will not sit there and just allow a miscarriage of justice to happen again with an unfair proceeding without me filing evidence to help show the truth to this court. The Probationer and Defendant does not wish to make accusatory claims against the United States of America unless any such claims are necessary. Rather the Defendant wishes to file the evidence Exhibits and this Declaration in hope that it will aid the Judge in making a correct and justifiable decision for modifying the Defendant's conditions of supervision (Doc. #11) since the Defendant's position is asking for better conditions as was stated in Document #26 (ECF No. 26). The Defendant wants to submit the evidence for the judge to look at and asks that it is up to the honorable judge to review over the evidence, listen to the audio recordings, then come to a conclusion based upon the evidence. Not every audio recording between Brian Hill and Haylea Workman is in the attached exhibits. The Defendant wants to file hard evidence which any irrefutable evidence will help the judge in making the best decision possible under the FACTS AND THE LAW, the facts and the law are important in this case regarding the supervised release of Brian David Hill.

| EXHIBIT #: | NUMBER OF PAGES: | DESCRIPTION: |
| --- | --- | --- |

6

| EXHIBIT 1 | 1 page for NOTICE OF FILING PAPER OR PHYSICAL MATERIALS WITH THE CLERK. 2 pages for Table of Contents. 1 page for exhibit page marker. 4 pages total. | Audio CD-Jason McMurray recordings. 19 audio tracks of 19 audio files, Phone calls between Brian D. Hill and Jason McMurray. See **TABLE OF CONTENTS - EXHIBIT 1** Audio CD-Jason McMurray recordings. True and correct copies of these legally recorded phone call recordings authorized by Brian David Hill under one party consent. |
|---|---|---|
| EXHIBIT 2 | 17 pages total. | 8 separate documents of evidence regarding threatening emails and proof of the threatening emails were reported to law enforcement except one threatening email from 2013 was reported in an email from Brian D. Hill in 2013 to J. Joy Strickland of the NC DOJ (Asst. Attorney General of NC) when Brian was allowed to use the internet. See United States v. HILL, 1:13-cr- |

| | | 00435, (M.D.N.C. Apr 27, 2015) ECF No. 84. |
|---|---|---|
| EXHIBIT 3 | 16 pages total. | Roberta Hill emails concerning emails from Jason McMurray and emails to Jason McMurray. |
| EXHIBIT 4 | 54 pages total. | Declarations from Brian David Hill. Email from Roberta Hill to USPO Haylea Workman. Stella Forinash letter to Chief Probation Officer, and letter to judge as well as an additional letter for the judge. |
| EXHIBIT 5 | 31 pages total but footer incorrectly stated "EXHIBIT PAGES # OF 17" when it is 31 pages. Clerical mistake. | Cumulative evidence of medical records, psychosis diagnosis, body-camera footage deletion in non-compliance with three court orders for discovery, and evidence of carbon monoxide gas. Helps prove Defendant was intoxicated because of the carbon monoxide gas but certain evidence was covered up and deleted. |
| EXHIBIT 6 | 2 pages including exhibit page marker. | Exhibit 6-Feb audio recording Haylea Workman and Brian Hill |

| | | Feb 28, 454068(audio amplified).wav Recording dated February 28, 2024. |
|---|---|---|
| | . | |

NON-EXHIBIT PIECES OF EVIDENCE THIS COURT SHOULD REVIEW BEFORE ANY PROCEEDINGS:

**United States v. Hill, 7:18-mj-00149, (W.D. Va. May 02, 2022) ECF No. 30:**

DOCKET ENTRY: "TRANSCRIPT of Proceedings as to Brian David Hill for Supervised Releave Revocation Hearing held on 12/26/2018 before Judge Ballou. Court Reporter/Transcriber: Mary J. Butenschoen, Telephone number 540-857-5100 Ext 5312 NOTICE RE REDACTION OF TRANSCRIPTS:The parties have seven (7) calendar days to file with the Court a Notice of Intent to Request Redaction of this transcript. If no such Notice is filed, the transcript will be made remotely electronically available to the public without redaction after 90 calendar days. The policy is located on our website at www.vawd.uscourts.gov Transcript may be viewed at the court public terminal or purchased through Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER unless a Redacted Transcript has been filed. Redaction Request due 5/23/2022. Redacted Transcript Deadline set for 6/2/2022. Release of Transcript Restriction set for 8/1/2022. (mb)"

**United States v. HILL, 1:13-cr-00435, (M.D.N.C. Nov 04, 2019) ECF No. 215:**

NOTE: Brian refers to reviewing over the portions which Jason McMurray had testified.

TRANSCRIPT filed as to BRIAN DAVID HILL for dates of 09/12/2019, before Judge Thomas D. Schroeder, re 186 Supervised Release - Final Revocation Hrg,,,, Court Reporter Briana L. Bell, Telephone number 336-734-2514. Email: brinesbit@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Reporter before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.

NOTICE RE: REDACTION OF TRANSCRIPTS: The parties have 5 business days to file a Notice of Intent to Request Redaction and 21 calendar days to file a Redaction Request. If no notice is filed, this transcript will be made electronically available to the public without redaction after 90 calendar days. Transcript may be viewed at the court public terminal or purchased through the court reporter before the 90 day deadline. After that date it may be obtained through PACER.

Does this satisfy all appellate orders for this reporter? y Redaction Request due 12/2/2019. Redacted Transcript Deadline set for 12/12/2019. Release of Transcript Restriction set for 2/7/2020. (Bell, Briana) (Entered: 11/06/2019)

10

| ATTACHMENTS TO MAIN DOCUMENT: | NUMBER OF PAGES: | DESCRIPTION: |
|---|---|---|
| 1. Jason McMurray Obituary - Roanoke, VA _ Oakey's East Chapel | 6 pages | An obituary of former U.S. Probation Officer Jason McMurray. February 16th, 1978 - October 27th, 2024. Proves witness which would have been favorable to the Defendant is unavailable which makes the hearing over the modification to being unfair which is why Defendant is submitting his statements under oath and additional evidence on a pro se basis. |
| 2. Interview and Interrogation of people with autism (including Asperger syndrome) By Dennis Debbaudt | 3 pages | A whitepaper from expert witness Dennis Debbaudt about interview and interrogation of those with autism spectrum disorder. The Court can contact this expert witness to ask about how they could question an individual with autism spectrum disorder or Aspergers to ensure the hearing is fair for Brian David Hill who has autism, |

| 3. Emerald Isle Date is February 14, 2024_redacted | 10 pages | Notes and typed statements from Stella Forinash about an incident which Haylea Workman may have caused. Defendant and Defendant's family suspect that Haylea Workman contacted a police officer from Emerald Isle, NC to pull over a vehicle from Virginia, Defendant's grandpa's vehicle. |
|---|---|---|

The Attorney did a great job on ECF No. 26, however the Defendant and Probationer feels the need to file this pro se, hopefully just one time Defendant needs to file something pro se with the U.S. District Court such as this because the Defendant fears that he will not receive a fair trial/hearing over the petition to modify the supervised release conditions under ECF No. 11, and the Position paper by the Government in ECF No. 23. The Defendant fears he will not receive a fair impartial hearing under the following reasons as supported by the submitted evidence along with this main document pleading:

1. Jason McMurray had been deceased since October 27, 2024. ECF No. 11 was filed or executed on October 28, 2024, and was signed by the judicial

officer on November 15, 2024. USPO Haylea N. Workman signed the declaration in ECF No. 11.

2. The issues involving what led up to the petition in ECF No. 11 stemmed from April 25, 2024. The U.S. Probation Officer Haylea Workman and her supervisor had plenty of time to obtain statements from USPO McMurray while he was still alive until his death on October 27, 2024. Instead, they waited until a day after USPO McMurray's death for USPO Haylea Workman to file a petition to modify Brian David Hill's conditions of supervised release (ECF No. 11), and then the position papers of the Government in ECF No. 23. Knowing that with USPO McMurray being deceased, he cannot possibly testify as a witness in Defendant Brian Hill's favor at the modification hearing. Forcing the Defendant and his mother to have to testify on the stand as the only witnesses as to what Defendant's former probation officer Jason McMurray had allowed and permitted as to internet capable devices, playing video games, watching TV, and typing up legal pleadings and legal letters on his offline desktop computer.

3. Probationer/Defendant is not insinuating anything sinister when there is no evidence, but last year Probationer's/Defendant's mother Roberta Hill received a threatening email which was reported very quickly to the Virginia State Police, and one of the claims in the threatening email was they will kill

13

the witnesses concerning Brian's criminal case. The threat email was dated:

3/4/2023 5:33 PM. It said and I copied and pasted from the PDF File of the

threat message, it said: (partial citation)

"WE........WILL................KILL................THE.......WITNESSES........THE

N.......WE........KILL" (partially omitted). It is interesting that the threat

email talked about killing "witnesses" in Brian's criminal case and then the

petition for modification under ECF No. 11 is signed for and executed on

October 28, 2024, a day after the death of USPO McMurray. Very

interesting. That particular threatening email is in **<u>EXHIBIT 2</u>**. As well as

the evidence of reporting to law enforcement.

4. In preparation for the modification hearing, since Defendant's attorney

   admitted repeatedly that she is limited in what she can do for the Defendant

   regarding this matter, Defendant fears that important critical evidence in

   support of this pleading may never be heard at this future hearing. Defendant

   fears he will not receive a fair impartial proceeding regarding this matter

   since the death of McMurray and the issues of Defendant's autism as to

   being a communication/neurological disorder. Defendant has autism

   spectrum disorder (ASD), which had been diagnosed at age 4 which he still

   suffers from ASD. Defendant has medical papers proving this fact including

   the TEACCH papers. See Hill v. Executive Office for United States

Attorneys, 4:17-cv-00027, (W.D. Va. Jul 03, 2017) ECF No. 23. Defendant

has autism and is under stress: "*communications skills may diminish or*

*disappear. Answers may seem evasive or unconnected to the question that*

*was asked. Individuals may appear belligerent, argumentative, stubborn, or*

*inattentive - behaviour that may seem indicative of a person with something*

*to hide*." See the attached Dennis Debbaudt 3-page whitepaper entitled:

"Interview and Interrogation of people with autism (including Asperger

syndrome) By Dennis Debbaudt".

5. Because of McMurray not being available to testify as a witness, the only

witnesses available to explain to the court about Defendant's compliance

with supervised release would be the Defendant himself, as well as Roberta

Hill since they both had many encounters with USPO McMurray, and as to

what this former Probation Officer permitted the Defendant to do in order to

comply with his conditions. Such as USPO McMurray allowing video game

playing without monitoring, such as allowing the Defendant to watch

Mandalorian and streaming content on ROKU on a TV (what they call a

Smart TV) without monitoring. Jason McMurray permitted all of that but

with him being deceased poses a problem for the Defendant being able to

have his former probation officer demonstrate that proof to this court.

6. The Defendant Brian David Hill will not do well to testify on the stand due to his autism (ASD), obsessive compulsive disorder (OCD), and generalized anxiety disorder (GAD). Which is why in order for the hearing to be more fair and honest, Defendant hereby submits **EXHIBIT 4**, which contains 2 unsworn affidavits which are called Declarations, as well as other documents after those two declarations. The Defendant is welcome to have the U.S. Attorney make a response to this evidence filing and allow them to have an opportunity to respond. However, the Defendant does better with making statements on paper under penalty of perjury, rather than testifying on the stand due to the nature of his chronic illnesses and neurological disability.

7. Defendant had recorded phone conversations with himself and USPO McMurray while he was still alive and was conducting the supervision of Brian Hill since 2015 until Haylea Workman was assigned as USPO in November 2023. See **EXHIBIT 1**, which has nineteen (19) audio recordings of the conversations between Brian Hill and Jason McMurray. These recordings show the compliance of Defendant's supervision and point out some interesting things which may contradict the Government's filing in ECF No. 23. In one recording Jason McMurray and Brian discussed the Star Wars streaming TV show called Mandalorian, so Jason knew Brian had watched that Star Wars content which his mother at one time had access to a

16

Disney+ subscription account. In another conversation Jason spoke of

conducting a probation visit over Brian's mom's cell phone to do facetime

chat (over the internet) during the Covid-19 pandemic. Another conversation

of where Brian told Jason about playing "games" with his mom. Jason

McMurray allowed Brian to play video games such as Legend of Zelda on

Nintendo Switch, Xenoblade Chronicles on Nintendo Switch, Tales of Arise

on PlayStation 4, video games with Brian's mother, and The Elder Scrolls

V: Skyrim on XBOX. Jason allowed all of that. No problems came out of it.

No legal issues came out of it because Jason trusted the Defendant and the

Defendant was rewarded by complying with his conditions of supervised

release. Jason encouraged compliance by rewarding the Defendant with

being allowed to play video games and watch TV shows on ROKU. It is a

good strategy to reward somebody for good behavior and for compliance

with the conditions while on federal probation. Jason made compliance a

better way to do things, and he was professional and ethical about ensuring

Defendant's compliance with supervision. The more Brian complies, the

restrictions are not as many. Jason McMurray did a great job in how he

conducted the supervision to ensure Defendant's compliance. Supervised

release is about rehabilitation, making sure somebody is a law-abiding

member of society. Jason McMurray I believe made sure to reflect those values when he was a probation officer.

8. The Defendant had been accused in 2018 of indecent exposure and was then charged with a supervised release violation which was later found to be a successful revocation. However, there is a pending case of a 2255 Motion in the Middle District of North Carolina which has a pending appeal. See United States v. HILL, 1:13-cr-00435, (M.D.N.C. Dec 16, 2024) ECF No. 341. It does concern actual innocence. The Defendant is submitting evidence in **EXHIBIT 5**, proof that later surfaced which USPO McMurray was not aware of at the time Defendant was charged with the supervised release violation at the time. Evidence surfaced at a later time which had shown that the Defendant may not have violated his supervised release. The evidence is that on the hospital emergency room visit on September 21, 2018, on the day of Defendant's arrest for indecent exposure, Defendant had multiple abnormally high resting blood pulse which is given the medical term "tachycardia", but the medical staff never investigated any further as to why. The Defendant had different lab tests ordered but then were DELETED FROM THE CHART. They did not clear Defendant medically from the perspective of not being intoxicated because the lab tests were never listed as completed but were DELETED FROM THE CHART. They were covered

18

up. The Defendant uncovered evidence in 2023 after a FOIA request with the City of Martinsville, about the body-camera footage on the day of Defendant's indecent exposure which the U.S. Probation Office never obtained a copy of and was never shown at the revocation hearing on September 12, 2019. The chief of police Rob Fincher admitted it was never marked as evidence by the state prosecutor also called the Commonwealth's Attorney (Glen Andrew Hall, Esq) who was solely responsible for marking the body-camera footage as evidence. There were three court orders asking for the Brady evidence aka the body-camera footage as was asked by Scott Albrecht, Brian's court appointed defense lawyer at the time. The body-camera footage was deleted and the cop-car cam (in car camera) footage of the Defendant at the time of his arrest was also deleted. This was in non-compliance with three separate court orders for the very discovery evidence which was covered up. Unlawful spoliation of evidence. Defendant has a right to assert an adverse inference against the Government, and Defendant asserts that the body-camera footage and in-car camera footage would have proven that Defendant exhibited intoxication type behavior or demeanor which any behavioral expert may be able to determine that Defendant was intoxicated on September 21, 2018, at the time of Defendant's arrest. The evidence of this body-camera footage destruction evidence was not known

until Defendant's FOIA request in 2023 due to the retirement of corrupt

Police Chief G. E. Cassady and then Rob Fincher became the police chief

for the City of Martinsville. So, evidence was covered up from multiple

angles. The body-camera footage was covered up, the in-car camera footage

by Martinsville Police was covered up, and the hospital lab tests were

covered up. The cover ups all surround the Defendant being intoxicated at

the time of his arrest for indecent exposure. However, the Defendant has

evidence in **EXHIBIT 5**, of the Pete Compton letter about carbon monoxide

being present at the Triplex of where Defendant has been living since before

the indecent exposure and after the Defendant was released on bond

regarding that charge. Other material evidence was that Defendant had been

diagnosed only one time as to having a PSYCHOSIS but was unknown as to

what caused it. Defendant was diagnosed with "psychosis" in October 2018,

after Defendant explained why he was charged with indecent exposure, and

that disorder was not made known to the mental evaluation conducted as

ordered by the General District Court. Psychosis can also be caused by

intoxication caused by carbon monoxide exposure. Also, Defendant submits

a copy of his medical record from Carilion Clinic where it said: "Collected

On 07/31/18 1122" regarding lab test or tests and it had abnormal readings

of RBC, Lymph, and Absolute Mono. The medical record said:

"COMPREHENSIVE METABOLIC PANEL(COMP) [368602038]

(Abnormal)". That can also be caused by carbon monoxide poisoning and

intoxication, and that was after blood sample was obtained on July 31, 2018,

a few months before Defendant's arrest for indecent exposure. If the lab tests

had not been deleted from the chart and shown the records of completion,

Defendant asserts that abnormal blood levels would have been discovered

then the Martinsville Police would have suspected intoxication, and likely

would have conducted an inquiry/investigation into Defendant's

intoxication. Had the lab tests not been covered up, Defendant would not

have been revoked of supervised release and Defendant would have been off

of supervised release since November 2024.

9. The Defendant fears he will not be given a fair hearing so this evidence is

being submitted by Defendant on a pro se basis to protect himself from an

ambush hearing where the prosecutor will most likely get his way without

USPO McMurray being alive to testify at the hearing and then the

prosecutor will be taking advantage of Defendant's autism and OCD. That is

not a fair hearing. The Probation Officer doesn't have autism. The

prosecutor doesn't have autism. The Defendant will be at an unfair

advantage in a room with lawyers and people while the Defendant has

autism.

10. The Defendant fears if he testifies on the stand, the prosecutor will grill the Defendant or use manipulation skills (psychological manipulation) into setting Defendant up (set up) for a perjury trap entrapment with making a false confession or misleading statement according to the whitepaper by Dennis Debbaudt or the prosecutor may try to instigate the Defendant or say things purposefully to anger the Defendant into having an autism meltdown in federal court. For these reasons, the Defendant would rather submit an affidavit as is being submitted as **EXHIBIT 4**. A typed/written affidavit is sufficient as to the Defendant's testimony since his autism will create an unfair advantage in the courtroom, an unfair advantage the prosecutor can use to his benefit.

11. The Defendant has PDF files of emails Roberta Hill had sent to USPO McMurray and emails from USPO McMurray. These emails prove that USPO McMurray did not think of Defendant as a danger to society that he gave the Defendant permission to go see his dying granddad James Mercer in North Carolina, and that permission was that on any day, a day trip, the Defendant can go see his granddad any time as long as it is a day trip. Jason said in one email in **EXHIBIT 3**, citation: Absolutely. You may go visit him anytime. Hopefully he recovers very soon and comes home.". Jason said Defendant can visit his dying granddad anytime in the year of 2023, date:

Sunday, July 16, 2023 at 03:41:18 PM EDT. If Defendant was such an issue, if Defendant was wrongfully labeled such a danger to the community, then why did Jason feel that Defendant was safe enough to go to North Carolina "anytime" to see his dying granddad? Never asked what time the Defendant would leave and come back home except for when the Defendant had to submit schedules to Jason back in 2015 while he was on home detention for six months. Jason McMurray clearly knew the Defendant was safe to even travel on a day trip "anytime" in the year of 2023. Those emails are very telling about the Defendant's safety risk, trust, and compliance with his supervised release. His Probation Officer clearly trusted the Defendant to comply before he was deceased on October 27, 2024, and before Haylea Workman was assigned to Defendant's supervised release.

This evidence is in Defendant's favor. Defendant submits this to the Honorable Clerk and to the Honorable Thomas T. Cullen.

Respectfully filed with the Court, this the 21st day of December, 2024.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 21, 2024.

Respectfully submitted,

*Brian D. Hill*
Signed

**Brian D. Hill**

Signed

Brian D. Hill (Pro Se)

310 Forest Street, Apartment 2

Martinsville, Virginia 24112

Phone #: (276) 790-3505



Former U.S.W.G.O. Alternative News reporter

I stand with Q Intelligence and Lin Wood – Drain the Swamp

I ask Q Intelligence and Lin Wood for Assistance (S.O.S.)

Make America Great Again

Family provided text of link: https://rumble.com/v2ozhp6-the-deep-state-can-frame-you-the-documentary.html -- JusticeForUSWGO.wordpress.com

**Family provided text of link**: USWGO.COM // JUSTICEFORUSWGO.NL

Petitioner also requests with the Court that a copy of this pleading be served upon the Government as stated in 28 U.S.C.§ 1915(d), that "The officers of the court shall issue and serve all process, and preform all duties in such cases. Witnesses shall attend as in other cases, and the same remedies shall be available as are provided for by law in other cases". Petitioner requests that copies be served with the U.S. Attorney office of Roanoke, VA via CM/ECF Notice of Electronic Filing ("NEF") email, by facsimile if the Government consents, or upon U.S. Mail. Thank You!

**CERTIFICATE OF SERVICE**

Petitioner/Defendant hereby certifies that on December 21, 2024, service was made by mailing the original of the foregoing:

"CRIMINAL DEFENDANT BRIAN DAVID HILL'S NOTICE OF FILING EVIDENCE NECESSARY BEFORE THE HEARING, AND REQUEST TO TAKE IT INTO CONSIDERATION AT THE HEARING"

24

by deposit in the United States Post Office, in an envelope or box, Postage prepaid, on December 21, 2024 addressed to the Clerk of the Court in the U.S. District Court, for the Middle District of North Carolina, 324 West Market Street, Greensboro, NC 27401.

Then pursuant to 28 U.S.C. §1915(d), Petitioner requests that the Clerk of the Court move to electronically file the foregoing using the CM/ECF system which will send notification of such filing to the following parties to be served in this action:

| | |
|---|---|
| DREW O. INMAN<br>PA Bar No. 328494<br>Assistant United States Attorney<br>P.O. Box 1709<br>Roanoke, VA 24008-1709<br>540-857-2250 (Office)<br>540-857-2614 (Fax)<br>drew.inman@usdoj.gov | |
| | |

This is pursuant to Petitioner's "In forma Pauperis" ("IFP") status, 28 U.S.C. §1915(d) that "The officers of the court shall issue and serve all process, and perform all duties in such cases ... "the Clerk shall serve process via CM/ECF to serve process with all parties.

| | |
|---|---|
| Date of signing:<br><br>**December 21, 2024** | Respectfully submitted,<br><br>*Brian D. Hill*<br>Signed<br>**Brian D. Hill**<br>Signed<br>Brian D. Hill (Pro Se)<br>310 Forest Street, Apartment 2<br>Martinsville, Virginia 24112<br>Phone #: (276) 790-3505<br>**U.S.W.G.O.**<br>I stand with Q Intelligence and Lin Wood – Drain the Swamp |

|  | I ask Q Intelligence and Lin Wood for Assistance (S.O.S.) Make America Great Again |
| --- | --- |

Family provided text of link: **Friend's justice site: JusticeForUSWGO.wordpress.com**

Family provided text of link: JusticeForUSWGO.NL; https://rumble.com/v2ozhp6-the-deep-state-can-frame-you-the-documentary.html

  

My family provided me with the image of the QR Code. No internet used. My family is allowed to obtain evidence and things for me to use in this legal pleading. They assist me in my legal work.

**THE DEEP STATE CAN FRAME YOU - THE DOCUMENTARY**

THE CIA AND FEDERAL AGENCIES THINK THEY CAN FRAME UP WHOEVER THEY WANT.



My family provided me with the image of the QR Code. No internet used. My family is allowed to obtain evidence and things for me to use in this legal pleading. They assist me in my legal work.





## Jason McMurray

February 16th, 1978 - October 27th, 2024

Recommend this to your friends.

**Funeral Details**     **Memory Wall**     **Photos & Videos**

## Obituary

PRINT (OBIT.PHP?
&PRINTABLE=TRUE)

Please share your favorite memory of Jason
McMurray to be included in a special keepsake
book for the family.

Jason Matthew McMurray, 46, passed away on Sunday,
October 27, 2024, at Carilion Roanoke Memorial
Hospital, Roanoke, VA, following a long illness.

Privacy · Terms



(Gus) Quin; uncle, Jeff (Crystal) Daugherty, several cousins, and his canine brother, Cash.

Jason was predeceased by his father, Frank McMurray; paternal grandparents, Virgil and Gladys McMurray; and maternal grandparents, John and Merle Daugherty, and an aunt, Mavis Hatton.

Jason always loved the outdoors. As a young boy, he loved nothing better than digging for and collecting rocks and fossils. As an adult, he frequently added more of these to his childhood collection and acquired many beautiful specimens. He loved fishing and kayaking. His passion, however, was grilling and smoking various meats, vegetables, and whatever struck his fancy. Lifting was an important priority in his life and the gym was his home away from home.  He especially enjoyed spending time with his Top Dawgs' family. In his downtime at home, he enjoyed relaxing in his favorite room aka 'man cave', which was impressively wired with a sound system that a movie theater would envy.  Football, Basketball, WWE Wrestling, National Geographic, movies, and programs about the Universe on the Discovery Channel were among his viewing choices for spending the evening. 'Bar Rescue' was his favorite television series, and he was also a fan of 'The Big Bang Theory'. When it came to movies, there was one franchise that topped his list from the age of five – 'Star Wars'.  Jason was also a long-time avid gamer.

Jason was an individual who cared about others, and above all, he honored his parents and contacted them several times a week to be sure all was well. He was especially protective of his mother after his father passed away.  No parent could have asked for a better son. He was held in the highest regard by his family, friends, co-workers, and former teachers.  His passing ripped a



The family will receive friends on Friday, November 1, 2024, from 4:00PM to 7:00PM at the Oakey's East Chapel.  A graveside service will be held on Saturday, November 2, 2024 at 2:00PM at the Holston View Cemetery in Weber City, VA with the Rev. Ronald Horne officiating.  Pallbearers will be Jason's Co-Workers and Friends.

In lieu of flowers, donations may be made to the Roanoke Rescue Mission in memory of Jason McMurray.

Arrangements by Oakey's East Chapel, 540-977-3909.

**Read Less**

To **send flowers (https://oakeys-east-chapel.tributestore.com/?old=33553208)** to the family or **plant a tree (https://tree.tributestore.com/memorial-tree?old=33553208)** in memory of Jason McMurray, please visit our **Heartfelt Sympathies Store (https://oakeys-east-chapel.tributestore.com/?old=33553208)**.

## Service Details

PRINT (SERVICE-DETAILS.PHP?PRINTABLE=TRUE) 🖨

Visitation                                                                      ⌄

**When**
Friday, November 1st, 2024 4:00pm - 7:00pm

**Location**
Oakey's East Chapel

**Address**
5188 Cloverdale Road
Roanoke, VA 24019

**Get Directions:** **View Map (https://www.google.com/maps/search/? api=1&query=5188 Cloverdale Road** ~~Roanoke VA~~ **24019 UNITED STATES)** | **Text** | **Email**



Send Flowers (https://oakey~~s-~~ ~~~~el.tributestore.com/? oid=33553208)



Graveside Service ⌄

**When**
Saturday, November 2nd, 2024 2:00pm

**Location**
Holston View Cemetery

**Address**
1383 US Highway 23 S
Weber City, Virginia 24290

**Get Directions:** **View Map (https://www.google.com/maps/search/? api=1&query=1383 US Highway 23 S Weber City Virginia 24290 UNITED STATES)** | **Text** | **Email**

**Officiant**
Rev. Ronald Horne

Send Flowers (https://oakey~~s-~~ ~~~~el.tributestore.com/? oid=33553208)



## Online Memory & Photo Sharing Event

🕐 Ongoing

📍 Online Event

**About this event**

    **Look inside to read what others have shared**

Family and friends are coming together online to create a special keepsake. Every memory left on the online obituary will be automatically included in this book.

View Tribute Book (https://www.tribu tebook.com/doma ins/6cb5d451- 684f-4088-9ab4- ccf6001a5c2d/obi tuaries/3355320 8/ book)



In the event that there is an error in the information presented, please contact the funeral home by clicking here.

ROANOKE | NORTH | VINTON | SOUTH | EAST | THE CREMATION TRIBUTE CENTER (AT OAKEY'S SOUTH CHAPEL)

Please call us at 540-982-2100. We are available 24 hours a day, 365 days a year.



Admin | Obittree | Privacy Policy | Terms of Use | Sitemap | Obituary Directory | Powered by FrontRunner Professional

# Interview and Interrogation of people with autism (including Asperger syndrome)

By Dennis Debbaudt

Conducting on-scene interviews of victims, witnesses, and suspects, a routine event for patrol officers, allows the officer to gather basic information such as who, what, where, when, and why. The officer uses this information to assess situations and decide on further action.

An interrogation differs somewhat from basic fact-gathering since it tends to focus more on a subject who probably is suspected of a criminal act. Different techniques, rules, and procedures apply during an interrogation. A law enforcement professional may be trained in the techniques of interrogation, the rules that apply - such as when to advise suspects of their legal rights - and what procedures to use - such as the venue, environment, or comfort level of the suspect. An interrogation is conducted when there is reason to suspect that a person knows more about or was involved in committing a criminal act.

Whether it is a simple field interview, or a more focused interrogation, dealing with persons with autism presents unique challenges and considerations.

### Misleading indications of guilt

There will be occasions when first-responders refer a case involving a person with autism for further questioning. In most cases this will involve an individual who apparently communicates very well and has achieved a high level of independence in the community. The person may have been found at or been identified by others as being at the scene or possessing knowledge of a crime.

Higher-functioning or more independent individuals with autism may live alone or without constant supervision, be able to drive or use public transportation, hold a job, and enjoy leisure activities. They may possess apparently normal verbal skills but be deficient in comprehension, social awareness, and decision-making. They may appear as quite normal at first, but the symptoms, behaviours, and characteristics - for example, providing blunt or tactless answers, changing the subject, or being unable to understand or accept a rational answer - will become apparent to the educated investigator. However, without an understanding of the disability it will be easy to misinterpret the information provided as an indicator of guilt.

They may provide no eye contact at all, even when a questioner shifts their position to obtain it. The person may have been taught to give eye contact but this may be perceived as insincere, glaring, or fixated. The interviewer may mistake this unusual eye contact as a tension-relieving technique used by a guilty person, when it is nothing more than a symptom of the condition of autism.

When stressed, communications skills may diminish or disappear. Answers may seem evasive or unconnected to the question that was asked. Individuals may appear belligerent, argumentative, stubborn, or inattentive - behaviour that may seem indicative of a person with something to hide. They can easily become the object of increased scrutiny by the questioner. What started as a routine fact-gathering task may turn into an unnecessary interrogation because an officer, unfamiliar with the behaviours of ASDs may have had their law enforcement instincts rightfully aroused.

### Possible traps when interrogating a person with autism

Techniques used during interrogations may include the use of trickery and deceit:

'Without some elements of "trickery", such as leading the suspect to believe that the police have some tangible or specific evidence of guilt, many interrogations will be totally ineffective' (Inbau and Reid 1967, p.196).

'Only one important qualification has been attached to the rule; the trickery or deceit must not be of such nature as to induce a false confession' (Inbau and Reid 1967, p.195).

The higher-functioning person through his or her responses, and the unaware interrogator through

their beliefs, may become unwitting accomplices to continuing a faulty investigation in the best case or, in the worst case, to extracting a false confession.

The following are some possible traps that interrogators can fall into when conducting the interrogation of a person with autism.

### Memory Skills

Interrogators should understand that the person with autism may have highly developed memory skills. The person may have learned to commit facts or the statements of others to memory: This rote skill may allow him or her to quickly assimilate and regurgitate data. The individual may be more proficient in his or her expression of these facts than in comprehension of them. He or she may have developed a sophisticated form of echolalia, echoing and repeating the words of others. For example, the person with autism could memorize the allegations of a citizen overheard at the scene, facts inadvertently provided by a first-responding officer, and details of some of the circumstantial evidence that an interrogator has revealed during questioning. Under these circumstances, the person with autism could provide a very convincing untrue statement or false confession. At the least, this knowledge could be misconstrued as real familiarity of facts that only a guilty person could know.

### The Interrogator as Authority Figure

Persons with autism may have been conditioned through their lifetime to look to authority figures to make many of life's important decisions for them. They have learned to depend on and trust these authority figures to be right. The interrogator may be viewed as another authority figure that is always right. 'If he thinks I robbed the bank, maybe he's right' is a conclusion that the confused person with autism may develop during an interrogation.

### Friendly-Unfriendly

Persons with autism may have a hard time developing friends. They may seek the friendship of others, only to be continually disappointed. They may repeat social gaffes that others find repelling, and they may learn little from these friend-seeking experiences. Although they may not have learned how to make a friend, this will not stop them from trying.

The interrogation techniques of friendly-unfriendly interrogators have the potential to produce false confession from such persons. 'The friendly-unfriendly act is particularly appropriate in the interrogation of a subject who is politely apathetic - the person who just nods his head as though in agreement with the interrogator, but says nothing in response except possibly a denial of guilt' (Inbau and Reid 1967, p.64). The person with autism may involuntarily give an interrogator the impression that he or she is apathetic, and may deny guilt because he or she is innocent.

The friendly interrogator may convince the trusting individual that they are, truly, their friend. The person with autism has now just made a new friend, and 'if my friend wants to know about me robbing a bank, then I'll tell him just to keep him around.' Rather than telling the truth, the person will tell his or her 'friend' what he or she thinks they want to hear.

### Concrete Thinkers

Persons with autism are concrete thinkers. Jokes, sarcasm, innuendo, satire, trickery and deceit are difficult concepts for them to understand and appreciate. Their world is unadorned with pretext, pretence, sham, and dishonesty. They are naturally guileless and very honest. They are not very able liars. They expect others to be honest and they can become confused or disappointed when they are not. We have learned that persons with autism may not have a complete understanding of what is expected of them, or the consequences of their actions. They may not understand how serious the consequences of the confession will be for them. They may be led to believe that lying is what is expected of them.

### Poor Liars

An interrogator may seek an admission of lying about any part of the alleged offence. The person with autism may try to respond to this new friend or authority figure with what he or she believes is the reply that is wanted. The person may truly have made a mistake; to the interrogator, it was a lie.

When asked if he or she has ever thought about committing the offence in question, the honest-to-a-fault but innocent person with autism may answer 'Yes', as opposed to the characteristic answer of , No' from an innocent person. While both persons only thought in passing about

committing such an offence, the 'normal' person would not consider answering yes. The concrete-thinking autistic person may answer the question as it is asked, causing the interrogator to continue the probe.

It is possible that the person with autism has learned through experience to lie. But her or his attempts to lie will be done poorly. An interrogator should ask a series of unrelated questions to determine the person's ability and potential for lying. This should be done prior to asking questions that are pertinent to the matter at hand.

### Tips for the interviewer/interrogator

The interviewer must be specific in what information is sought by asking questions that avoid ambiguity. If the interviewer asks, 'Did you take the money?', the person with autism may say 'Yes' whether or not she or he actually took it. It would be clearer to ask, 'What did you do?' allowing for the individual to provide a response. If you ask, 'Were you with your family or John?' the autistic person may respond, 'John', because that was the last choice of the sequence. If the question was asked again but in reverse order, the autistic person may answer, 'My family,' for the same reason (Perske 1991).

A more specific question might be, 'Who were you with?' which reduces the influence of suggestion on the subject. Obtaining a false confession is a situation for which no conscientious law enforcement officer would want to be responsible.

Some other factors investigators may consider:

- Be sure the subject understands his or her legal rights.
- Saying yes is not the same as understanding them. To the concrete thinker 'waiving your right' may mean waving your right hand.
- To avoid confusion, ask questions that rely on narrative responses.
- Asking yes or no question is an essential and important element of determining guilt. But consider asking a series of yes or no questions to determine the style and dependability of the response. Then ask the key yes or no questions.
- Seek the advice of a psychiatrist or psychologist who is familiar with autism. Consider contacting a specialist in autism from outside the criminal justice system.
- Seek the advice of a prosecutor. You have a job to do and want to perform it in the best way possible. With their unusual responses to your questions, the higher-functioning person with autism may challenge all of your training.
- Follow procedure, but also follow your gut instincts if you feel that something isn't 'quite right' with the subject of your investigation. Like the old adage, if the statement or confession is too good to be true, it probably is.

Added by Brian D. Hill (12/19/2024):
This expert witness can be
contacted by the court at:
Email: ddpi@flash.net
Phone: (772) 398-9756

Brian David Hill and his family: Mom & Grandparents are very concerned about this and would appreciate your time to investigate what all we are writing here.  Is Brian safe with this probation officer, or are we getting ready for more setups and probation violations?  Please let us know your findings in email.  Thank you so much for your time reading this and investigating or sending it to someone who can investigate.

Date is February 14, 2024, Valentine's Day.   We all left our Virginia homes early to go to Emerald Isle, NC for vacation. Roberta sent an email to Brian's new probation officer to get permission to go to NC for 3 days, spending 2 nights at a vacation home with 3 bedrooms and 2 baths in a locked community along the beach at Emerald Isle.   This is a copy of the email Roberta sent at the bottom of the reply:

**Fw: Trip to North Carolina- Brian Hill**

----- Forwarded Message -----
**From:** Haylea Workman <haylea_workman@vawp.uscourts.gov>
**To:** Roberta Hill <rbhill67@yahoo.com>
**Sent:** Monday, February 12, 2024 at 11:13:29 AM EST
**Subject:** RE: Trip to North Carolina- Brian Hill

I will approve the travel.

**From:** Roberta Hill <rbhill67@yahoo.com>
**Sent:** Friday, February 9, 2024 1:30 PM
**To:** Haylea Workman <Haylea_Workman@vawp.uscourts.gov>
**Subject:** Trip to North Carolina- Brian Hill

**CAUTION - EXTERNAL:**

Hey,

Brian Hill would like to go on a trip to Emerald Isle beach in North Carolina to be with his grandparents for 3 days.  Brian and his mother, Roberta Hill, will be leaving on February 14th at around 7 am.  We will be staying two nights and 3 days at this address: 9201 Coast Guard Road, Emerald Isle, NC 28594.  We are staying with Kenneth Forinash and Stella Forinash, whom are Brian's grandparents.  We plan on returning home on February 16th at around 8 pm.

Brian's cell phone # █████████

Roberta Hill's cell phone # ██████████

Kenny Forinash's cell phone # █████████

Thanks,

Roberta Hill


**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.


Let's give a review of our history:  My husband, Kenneth Forinash is a retired veteran of the US Air Force with 21 years of service to his country, a Viet Nam veteran who had stomach cancer in 2006 due to agent orange and had to have his entire stomach removed and was given a very small chance of survival, chemo therapy in NC where he had lived from Dec. 2000 until 2007.  We have been together since 2000, married in 2005.  We bought our home in Martinsville, VA in 2007 where he had radiation treatment with a chemo bag in 2007 at the hospital in Martinsville, VA.   He joined the US Air force and had married at a young age after high school in the 1960s.  He and his wife had 5 children and 14 grandchildren.  I too had married right after high school graduation in 1966.  My husband and I had 2 daughters and 3 grandsons.  Brian is my grandson.  Brian has been a type 1 brittle diabetic since the age of eighteen months (1992) and has been diagnosed with a type of autism spectrum (developmental) disorder since the age of two.   My daughter (his mom) has been his caregiver since this premature baby was able to leave the hospital in Orlando, FL in June, 1990 and is still his full time caregiver (over 33 years).   She is also an author.

We (his mom & grandparents) are proud of Brian and have tried as hard as possible to make sure he has his insulin at all times as well as his emergency glucose in various forms.  His mom was unable to hold down a job due to his dad leaving and being a single mom to a son with so many severe disabilities.  His only source of income is his SSI disability money since he was 18 months old.   We have taken him on various vacations for over 33 years to try to help his mom and to keep his life as happy and as comfortable as possible due to all of his life of pain and discomfort due to this terrible disease.  His mom has kept him alive during these years by always being nearby, providing the glucose he needs during many severe seizures, day and night.  Brian actually learned to have his own website and many friends which is a miracle for someone with autism.  He did such a good job with his website (USWGO) which looked very professional that he and many other alternative news people were sued by

Righthaven in Nevada in 2011 for over $100,000 while he was living in NC for using a photo on his website which was originally used in a newspaper in Colorado. Righthaven was a group of attorneys, and the one suing Brian had worked at the same law firm with President Barack Obama and his wife, Michelle Obama.

We were there visiting our daughter and grandson when there was a police raid at Brian's home in August 2012 which lasted hours, and all computers, hard drives, etc were removed.   Brian also has OCD.  They spent the night at the rented house where they had lived for 7 years after the raid without a phone due to the police taking their modem & cell phones.  The very next day they had planned a visit with my husband and me at our Virginia home (4 apartments).  Brian also has OCD and never returned to his NC home due to police touching everything in that house.   Brian was writing some articles about the NC President pro tempore Senator Berger on his USWGO web page in May-July 2012 which apparently this senator didn't like.  Brian was arrested by home land security in his apartment in VA in Dec. 2013, taken to NC, spent 11 months in jail & prison due to what they claimed was child porn on his computer.   He was given an ineffective attorney in NC, judges in NC who were acquainted & friends with this NC senator & his son who was also an attorney and district attorney in Rockingham County, NC  in 2012 where this police raid happened.  Brian was not allowed to see his entire discovery (only small parts) as to why he was arrested.  His family was not allowed to see any of the discoveries by his court appointed attorney. Neither Brian nor his family had $300,000 to hire a private attorney so Brian really had no legal representation.  Brian always said he was innocent, and he and his family finally got the proof which was in the federal court records the entire time, presented this proof to this NC federal court, and they continue to ignore the proof of his innocence.  We do believe in God and know that in due time, all things get better in God's time and all truth will come out in the open (in the light).  God (true judge) knows the truth.

The proof is in the federal court records (if interested, we can tell you where to find this) in the August, 2012 search warrant when the police detective from Reidsville, NC whose sister was the assistant Rockingham County, NC District Attorney working with the NC Senator's son, Berger wrote that he decided at random to look into a computer IP address in July, 2012 (without a search warrant & probable cause) and claimed he found child porn, a **known** series.  After this he showed a local Mayodan, NC police detective who also described the **known** child porn he saw, **then** they went to a judge in another district to get a search warrant of the Hill's family house in Mayodan, Rockingham County, NC.  Months later in 2013 the NC SBI (NC State Bureau of

Investigation) got the computers and found "items of interest" in Brian's laptop computer and recorded the dates it was there.  It started on the **exact date in July, 2012** that the Reidsville, NC police detective wrote in the search warrant in August that he decided without a search warrant or probable cause to go into a computer at Brian's IP address with some type of shared device (claimed he picked an IP address at random) in the search warrant report from Aug. 2012) and ended 11 months later **July, 2013** after the police confiscated this computer (for about a year).  Police raid was in August, 2012.  **In other words, for 11 months, according to the NC SBI in Greensboro, NC, child porn or items of interest was being downloaded on Brian's computer when that computer wasn't even in Brian's possession**, and the **federal report** said there were **no victims**, and it was an "**unknown series**".  This entire time in the police department in Mayodan, Rockingham County, NC and in the federal court and jails in Greensboro and Winston Salem, NC, the Americans with Disabilities Act law was ignored, and Brian was not given the aids a person with brittle type 1 diabetes, autism and OCD would need.  In other words, the Americans with Disabilities Act was ignored by all of the above parties as well as other jails in NC.

After prison, Brian was put on probation for 10 years (Nov. 2014-Nov. 2024).  At first he had a very bad probation officer, then for the next almost 9 years, he had an outstanding probation officer.  We call him our earth angel because he was so very professional and respectful & understanding with Brian, Brian's disabilities & Brian's entire family.  Brian and his mom just recently had to deal with the illness and death of her step mother in July and her dad (Brian's granddad) in September, 2023.  Now they're adjusting to a different probation officer.  We thought this 3 day beach vacation would be a good, relaxing get away for all of us as Brian's mom's mom (me) am elderly and disabled, and his step grandpa is too so we know there won't be many more trips we'll be able to take together.  We drove two cars, met at the vacation home, unpacked, relaxed and visited, and then decided to eat out at a restaurant close to this vacation home.  The next day we had planned to spend more time at the beach and go out to a restaurant that we hadn't visited in years.

We were at a red light close to the vacation home when we turned left (husband's notes about this on bottom), and right away there was a police car behind us, lights flashing.  She told my husband he had turned left on a red light.  She got his license, went back to her car for a long time with her car lights flashing, came back, was very professional & friendly, told my husband she was giving him a warning and to be careful at red lights.  Brian was very upset that they were targeting him.  We all told him this had nothing to do with him.  It was because the caution light had changed to

red after grandpa started turning left. We thanked God that he wasn't given a ticket and that the police lady was very nice and just told him to be careful at red lights.

The next day, still disturbed from that incident, we all started thinking & talking about things. Was this new probation officer trying to set Brian up? Ken & I have been together for over 23 years, on many trips and never once has a police stopped him for anything. Roberta and Brian have been with us with him driving through New York City, through Washington DC, all the way on a driving trip out west to California, up north through all northern states and for miles through Canada, down south to Florida many times and one time to Key West, FL and many more local trips and vacations staying at motels, military bases and resorts. Now all of a sudden we are at the light closest to the vacation home, and a police stops him right at the light for turning left on a light that was caution and turned red as he was turning. That's strange!! Is Brian right? Was he the target? He was stopped by this local police right at the light.



See photo Brian's family obtained from the Internet:



Traffic light - pulled car very close to traffic light – gate at Pebble Beach is where we entered our vacation home.  "I just checked on Google Earth, and the light is .14 miles from the entrance to Pebble Beach.  I attached a graphic.  I was also able to zoom in to see where that median was in the middle of the road to determine about where Kenny pulled over.  It was very close to the entrance of the place that we stayed".

The warning ticket is hard to read:   It gives the address as



Coast Guard Rd/58 (traffic light).  Date 02/14/24.  Time 1843 (6:43 PM)



Let's start with my husband's name. Brian's mom had to tell the probation officer our names and cell phone numbers. She forgot that Ken is senior. He has a son with his exact name. His son is a manager at a Dollar General and is also an alcoholic. In fact, due to alcoholism, he lost his driver's license. Did someone check out his name and got the wrong Ken? Did they notify the police thinking Brian was riding with someone who no longer had a driver's license? If that was the case, wouldn't they arrest him right then, search the car and arrest Brian for being with Ken (probation violation)? Was this a set up? The police found out Ken had no other records. She checked Ken out good, could not find anything because he had a legal license to drive and had never been stopped by any police from Dec. 2000 until Feb. 14, 2024. This ended up ok, but now we know it could have been disastrous and ended our relaxing vacation with more worries. Are they trying now to again set Brian up with a probation violation (as threats received said), trying to jail him again, and is this new probation officer helping with this? Did she check Ken's name and got his son's driving record instead? It really looks like that is what happened. This worry makes Brian's brittle type 1 diabetes, autism and OCD worse with a small autistic meltdown this morning and low blood sugar incident (caught before the seizure) this morning before we left the vacation home in NC to return home to Virginia. We had to leave this vacation home before 10 this morning. 2/16/2024. Brian's grandmother: Stella Forinash

In addition Brian's mom and other people who have tried to help Brian got another threat email last year in 3/4/2023 which has us all concerned especially after what happened this week while we were on vacation and sent email to his probation officer with address and cell phone numbers of Brian & his family.

Brian and his mom have been receiving these threats since 2012. Others are receiving them too. They use horrible language.

egorfalcus@danwin1210.de                                          3/4/2023 5:33 PM

## WE....WARNED.....YOU....BITCH

To rbhill67@    •        • lwood@linwoodlaw.com

WE....WARNED.........YOU.....ALL.....BITCHED.......WE......KNOW......THE......JUDGES........WE.......HAD.
.........THEM......FUCKING.....LIL....GIRLZ.....ASSES.........THEM.....JUDGES.......OUUR.......HOES.........
HAHAHAHAHHAAHAHHA................BRIAN.....HILLL......WONT......JUST...............GET......RAPED......IN.
.........PRISON.......WE..........WILL..........KILL..........HIM..........HE..........WONT..............BE.
ALIVE......LONG......WE........HAVE.......MARTINSVILLE..........WE...............WILL..................GET.
..............YOU.......WE.........WILL..............KILL..........THE......WITNESSES.......THEN.......WE.......KILL.
............YOU.....TOOO........HAHAHAA...........FUCK...........QANOS.....FUCK.....Q....Q.....WILL.....DIE...
WE.....KILLL...........KILL............TRUMP,,,,,,,,,,AND.........KILL..........DIGITAL...............
...........SOLDIERS.........brian..,,...BE------------JAILED------------KILLLED---------------HE----------------
WONT--------------MAKE------------IT-OUT------------------ALIVE-------------EPSTEIN--------
----------BRIAN..............FUCKERS............HO3SSSSSSSSSSSSSSSSSSSSS..............WE.............
WILL..........KILL..............YOU..........ALLLLLLLLLLLLLLLLLLLLLLLLL...............WE.................WILL.
..............FUCK................UUUUUUUUUUUUUUUUUU...............UP

We're afraid what happened to Brian in 2018 was another set up. I wrote an email to my youngest daughter about it today (2/17/2024), and will copy what I wrote here. I just don't see a professional chimney company who was aware the people residing in this home heat their house with a natural gas furnace would put tin over all 3 chimney openings. Screen type topping would have kept birds out and would release that carbon monoxide gas. I think someone drove to the house and changed them when no one was home from screen to tin. The neighbors wouldn't question anything. If their home was a lot smaller, it would have killed them. The tin was there; Ken, Roberta and I were there when the chimney expert found this out in January, 2019 and showed us the tin. He felt and could tell which one had the gas furnace (warmer than the other 2) and quickly removed the tin after he made sure we all saw it. Then he showed us that above Brian's fireplace where the roof had already caved was right below Roberta's fireplace. Does Jason still work at the probation office? If so, you might want to show him this, and he would be the one who would understand everything better.

We went to the Roanoke, VA federal courthouse case in May, 2019 and all 4 of us were amazed at the difference in VA than NC. The judge, even the prosecuting attorney were so nice to us and so concerned about Brian. Everybody there was. Brian was there in Dec. 2018, and they were all worried about him. We weren't there in December. They were happy to meet all of us and said that Brian looked a lot better now & happier because we were there. The judge told Brian he was doing right and he should question everything, even in the courts. The police who arrested Brian in VA testified in the NC court that Brian was not being obscene. He thought Brian was medically cleared. We found out the Martinsville hospital took blood work but did not

check anything to see if there were drugs, carbon monoxide, etc (after Brian got out and got the hospital records).  They have on hospital record that Brian was type 1 diabetic and had autism.  The hospital didn't even check Brian's blood glucose after he had been out walking for hours in the middle of the night on the walking trail.  The police did not know that Brian had been diagnosed as type 1 brittle diabetic and OCD.  Brian was out of it that night, had no emergency medical supplies.   If he had, the police who arrested him & checked the backpack would have known he was diabetic.

We found out in that court case that he was wearing a type cap that he never wears, had a small backpack that Roberta had never seen (we found this out when we went to the jail in Salem, VA and picked it up in Jan. 2019).  The back pack had his clothes in it, a small flashlight and no emergency medical supplies at all.   In the court we found out he had a small pink camera not the large black camera he always takes with him.  The pink camera had a copy of a similar probation form he sends to probation office every month (anyone can get a copy of that form off of the Internet).  They said it said "author, Brian Hill".  The only photos in that pink camera were the photos of Brian taken on the walking trail that night at about midnight and 1 in the morning.  The large black camera and the large black camera case he always takes when he leaves home were still in the house.  His cell phone was in the house, not with him.  They managed to destroy the body cam at the police station.  The new police chief sent a letter to Brian a few months ago from his foil request that the body cam was there from records but since the prosecuting attorney did not request it, it was destroyed after a few months.  Two different judges (3 times) requested for all of that to be in court, but prosecution did not tell the police to preserve it.  Brian was supposed to be in jail for 2 weeks (actually was given bail but not knowing about the carbon monoxide, we refused to pay bail because we thought this was because of his autism getting worse & we wouldn't be able to do anything to help).  The Greensboro, NC probation office made this a probation violation with many months in prison.  We couldn't get help, tried to get him in a medical facility or in a special home but couldn't because of probation.  Carbon monoxide was still in their house until the last of January, 2019.   Brian could not have come back home at that time anyway.

His probation officer & Roberta testified for Brian in the Winston Salem federal court.  The judge would not take Brian's federal Virginia probation officer's word and said that his mom was not a professional in carbon monoxide.  We asked for a professional medical expert or a professional in carbon monoxide to testify before the trial case but judge refused that.  NC judge considered  the police officer to be a credible witness and sentenced Brian to 4 more years of probation (from 2024-2029) and more jail time which interfered with Brian's state appeal.  We have found the real criminals are in the judicial system (some judges, some lawyers, some police, some politicians and some probation officers).  Brian had to put his state appeal on hold while we took him to Kentucky to turn himself into the medical prison in the fall of 2019 (found out later they put Brian far away from the medical facilities, did not test his blood glucose the hours

he was there and did not give him any food).  We were on our way back home about 3 hours away when we got a call to come and pick Brian up at the prison because a special audit was done, and he had already served his time.  Roberta called his probation officer who told Roberta that was probably a mistake.  We waited.  He called back and said "Go and pick Brian up"  We drove back to the prison, spent the night in a motel and visited the Ark in Kentucky the next day before heading back to home - always try to make sweet lemonade out of sour lemons (Nick actually liked the sour lemons when he was little).

Enclosed:  Ken's notes below about the green/red light.
Brian Hill's 2 page Incident Notes dated 2/16/2024